FILED

08/27/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2025 Session

## STATE OF TENNESSEE v. NATHANIEL BUCHANAN, IN RE: McADOO BONDING COMPANY, SURETY

Appeal from the Circuit Court for Rutherford County
No. F-80648  James A. Turner, Judge

_____

No. M2024-00474-CCA-R3-CO

_____

A defendant was charged with one count of first-degree murder and one count of unlawful possession of a firearm. He was granted bail upon the posting of a $100,000 bond by a bonding company. In the wake of the defendant's successive failures to appear, the trial court ordered the bond forfeited. The defendant was apprehended several weeks after the bonding company paid the forfeiture, and the bonding company sought a refund. The trial court denied the refund, and the bonding company moved the trial court to set aside its order denying the refund. The trial court also denied the motion to set aside, and this appeal followed. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, SP.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

Joel H. Moseley, Jr., Murfreesboro, Tennessee (in trial court and on appeal), and John Mitchell, Murfreesboro, Tennessee (in trial court), for the appellant, McAdoo Bonding Company.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Matthew Westmoreland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.

In May 2018, Nathaniel Buchanan (Defendant) was charged with one count of first-degree murder and one count of possession of a weapon during the commission of a felony.[1] The trial court set the bond at $100,000 and ordered Defendant to wear a GPS monitoring device. McAdoo Bonding Company (McAdoo) issued the bond in July 2018, and it was filed with the trial court in August 2018.

In April 2021, the trial court entered an order authorizing the removal of the GPS tracking device as a condition of Defendant's bond. On December 10, 2021, the State filed a motion to revoke bail or increase the bond based on new criminal arrests and charges filed after the monitor removal. Defendant's counsel also moved to withdraw. The trial court heard these motions on January 13, 2022, but Defendant failed to appear. The trial court promptly granted the State's motion, ordering that a capias warrant be issued for Defendant and that he be held without bond.

On January 14, 2022, a "Forfeiture and Capias Order" was filed. It provides, in pertinent part, as follows:

> IT IS THEREFORE ORDERED by the Court that the State of Tennessee have and recover of the defendant, Nathaniel Buchanan and principal, and the said McAdoo Bonding as surety, the sum of $100,000.00 dollars, and all the costs of this cause.
>
> IT IS ORDERED that a Scire Facias be issued against the defendant and his/her surety and the defendant be notified by certified mail, making known to him/her these proceedings requiring him/her to appear instanter, and show cause, if any, why this judgment should not be made final. The surety, McAdoo Bonding shall be [sic] one hundred eight [sic] (180) days from this date to surrender the defendant or this forfeiture as to said surety will be made final.

The order also provides on a separate line, "STATUS OF FORFEITURE HEARING SET FOR: 7/15/22." It was mailed to both Defendant and McAdoo on January 18, 2022.

On January 18, 2022, a *scire facias* was issued, providing as follows:

---

[1] Defendant was subsequently indicted for one count of first-degree murder and one count of unlawfully possessing a firearm.

To Any Lawful Officer of Rutherford County:

You are hereby commanded to make known to McAdoo Bonding Company – Kristy McAdoo, that a conditional forfeiture was rendered by the Judge of the Rutherford County Circuit Court in and for said County against them, as bondsman for $100,000.00. If Nathaniel Lamont Buchanan has not appeared within 180 days from date of issue, the forfeiture will be made final, with the conditional hearing set for 7/15/2022.

This document was mailed to McAdoo on January 18, 2022.

On July 13, 2022, two days before the scheduled hearing, McAdoo filed with the trial court a Petition for Extension. McAdoo averred that it was searching for Defendant and requested "additional time on this forfeiture." A hearing on this request was scheduled for August 26, 2022, and that same day the trial court entered an order granting the Petition for Extension, extending the date of the conditional hearing by 180 days, so that it fell on Wednesday, January 11, 2023.

On December 16, 2022, McAdoo filed a second Petition for Extension, which the trial court scheduled for hearing on January 4, 2023. McAdoo requested a ninety-day extension and, by an order entered on January 4, 2023, the trial court granted an extension to May 31, 2023.

McAdoo filed a third request for an extension of time on May 24, 2023. In response to this request, the trial court entered an order extending the date of the conditional hearing to June 30, 2023, and stating that no more extensions would be granted. This final request for an extension and the court's grant of the extension are referenced in the court's subsequent orders but are not included in the record before us, and the record does not reflect what, if anything, occurred before the trial court on June 30, 2023.

On July 6, 2023, the trial court issued an order of final forfeiture[2] providing as follows:

> It appearing to the satisfaction of the Court that on 07/06/23, a Conditional Forfeiture was made on the bond of the above-named defendant and his sureties. The amount of the Bond(s) was $100,000.00 issued on 07/26/18. Scire Facias having been duly issued and duly returned into Court showing proper notice to the Sureties of the Defendant's Bond, and they have

---

[2] This order was filed on July 7, 2023.

- 3 -

failed to bring the Body of the Defendant before the Court within the 180-day period as they are bound to do, nor has the process duly issued for the arrest of the Defendant been executed.

It is therefore the orders of this Court pursuant to T.C.A. 40-11-139 that the Conditional Forfeiture made in this case against the Defendant and his Sureties, be and is hereby made final this date. Due notice of this Forfeiture will be made by mailing a certified copy of this order to all concerned.

It is therefore ordered by the Court that all the costs of this case be deducted and applied, and the balance of said amount to be paid to Rutherford County, Tennessee on the Clerk's proper agency reports. Final Forfeiture Due Date: 08/05/23.

McAdoo did not appeal this order within thirty days, and the record reflects that McAdoo paid the forfeiture in full on August 8, 2023. Defendant was eventually located and apprehended at his girlfriend's residence on October 18, 2023, more than two months after the forfeiture was paid. That same day, McAdoo filed a motion requesting that the forfeiture be refunded (the Refund Motion). As grounds for relief, McAdoo detailed the efforts it took to locate Defendant and asserted that Defendant was apprehended based on information that it provided to law enforcement.

As legal authority for its request, McAdoo relied on Tennessee Code Annotated section 40-11-204. That statute provides, in pertinent part, as follows:

[T]he judges of the general sessions, circuit, criminal and supreme courts may receive, hear and determine the petition of any person who claims relief is merited on any recognizances forfeited, and so lessen or absolutely remit the same, less a clerk's commission . . . of the original paid final forfeiture or one thousand dollars ($1,000), whichever is less, and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying for relief. This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid, as well as to the relief of those against whom proceedings are in progress.

Tenn. Code Ann. § 40-11-204(a)(1) (effective July 9, 2012, to June 30, 2025).[3]

---

[3] This statute was amended in 2025. *See* 2025 Tenn. Pub. Acts, ch. 395 § 1 (effective July 1, 2025).

On December 7, 2023, the trial court entered an order denying the Refund Motion (the Order Denying Refund). As grounds for its decision to deny McAdoo's request for a refund, the trial court set forth in the Order Denying Refund the following:

> After careful review of the record as a whole, the proof presented at the hearing of this petition, and applicable law, the Court finds that McAdoo Bonding Company has failed to prove it is entitled to relief from the forfeiture. McAdoo voluntarily entered a contract that burdened themselves with the responsibility of ensuring the defendant's presence on his designated court dates. When it failed to do so, it was generously afforded three extensions to locate the Defendant to no avail. Meanwhile, the Defendant, charged with this state's most serious violent crime, was unaccounted for from January 13, 2022 to October 18, 2023 (*1 year, 9 months and 5 days*). The Defendant was not located in another state or country, nor was there proof that he ever left the jurisdiction. Rather he was subsequently found within the city of his residence, the city of his arrest, the city where McAdoo maintains its primary office, and at an address 6 miles from the courthouse.

> McAdoo argues that its efforts to continue trying to locate the Defendant should be rewarded by the granting of its petition to the tune of $100,000.00, less the clerk's fee. Counsel argues that by granting this request, the Court would show to the local bonding industry the value in continuing to search for a defendant past the date of final forfeiture. The Court views the scenario differently. The Court finds that granting the petition would equate to eliminating any risk that a bail bonding company voluntarily assumes. This assumption of risk followed McAdoo receiving a payment of 10% of the bail amount. There is inherent risk in all business ventures, especially the bail bonding business. The relief the Court offered in this case was already granted in the multiple final forfeiture extensions.

> The Court further finds that McAdoo is precluded from relief under local rules for untimely apprehension. The Court finds that the defendant was apprehended approximately seventy-four (74) days after the forfeiture became final. Therefore, the defendant's apprehension was untimely for relief pursuant to Local Rule 16.04(F).[4]

---

[4] Rule 16.04(F) Local Rules of Practice, 16th Judicial District, provides that, "[u]pon a forfeiture becoming final and timely paid, the bonding entity may apply for the return of bond proceeds if the defendant is incarcerated within Tennessee within thirty (30) days of the forfeiture becoming final."

On January 8, 2024, McAdoo filed with the trial court a motion "pursuant to Tenn. Code Ann. § 40-11-204 and Rule 59.04 of the Tennessee Rules of Civil Procedure" to set aside the Order Denying Refund (the Motion to Set Aside). As grounds, McAdoo claimed (1) that its rights to procedural due process had been violated because there was never a hearing on the final forfeiture and (2) that the trial court erred in relying on Local Rule 16.04(F).

On February 28, 2024, the trial court filed a written order denying the Motion to Set Aside (the Order Denying Motion to Set Aside). Initially, the trial court stated that, in addition to addressing the motion as a Rule 59.04 motion, it was also evaluating the motion under Tennessee Rule of Civil Procedure 60.02 "because McAdoo essentially claims that the final forfeiture entered on July 6, 2023 is void" due to the alleged failure of the trial court to hold a final forfeiture hearing.[5] Relying on the plain language of Tennessee Code Annotated section 40-11-139[6] and this court's decision in *Danny Blankenship Bonding Co.*

---

[5] Tennessee Rule of Civil Procedure 60.02 provides,

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

[6] In July 2023, Tennessee Code Annotated section 40-11-139 provided as follows:

(a) If the defendant whose release is secured under § 40-11-122 does not comply with the conditions of the bail bond, the court having jurisdiction shall enter an order declaring the bail to be forfeited. Notice of the order of forfeiture shall be immediately sent by regular mail by the clerk of the court to the defendant at the defendant's last known address. The defendant's surety will be served with scire facias upon the forfeiture entered and a capias shall be issued for the defendant. When the defendant, who failed to appear pursuant to conditions of a bail bond, is arrested on a capias, the surety on the defendant's forfeited bond is released.

(b) After the expiration of one hundred eighty (180) days from the date surety is served with scire facias or scire facias is returned to the clerk unserved or undelivered, the court may enter judgment for the state against the defendant and the defendant's sureties for the amount of the bail and costs of the proceedings.

(c) No execution shall issue upon a final forfeit, nor shall proceedings be taken for its enforcement until the expiration of thirty (30) days after its entry.

- 6 -

*v. State*, No. W2015-00614-CCA-R3-CD, 2016 WL 409663 (Tenn. Crim. App. Feb. 3, 2016), the trial court concluded that it had no obligation to conduct a hearing prior to entering the final forfeiture judgment. The trial court stated:

> In the case at bar, McAdoo was never denied a hearing. McAdoo was given notice of the conditional forfeiture through the scire facias. The Court conducted multiple hearings on McAdoo's motions seeking an extension to locate and surrender the defendant prior to final forfeiture. In each and every hearing the Court allowed McAdoo to present any evidence it saw fit to introduce. However, the defendant was ultimately not located in time. An order of final forfeiture was accordingly entered by the Court. The final forfeiture was . . . then paid without protest.

> Following the Defendant's apprehension, McAdoo petitioned for exoneration. A hearing was held on that petition, and the request was denied. Now, McAdoo asserts, *for the first time*, after multiple evidentiary hearings, orders, extensions and payment of the forfeiture, that this Court failed to give them a hearing prior to final forfeiture.

> In applying *Danny Blankenship* and Tenn. Code Ann. § 40-11-139, this Court denies McAdoo's motion as to this ground.

The trial court also rejected McAdoo's argument that Local Rule 16.04(F) limited its discretion in determining relief, noting that Local Rule 1.01[7] permits a trial judge to suspend any of the local rules when justice requires.

McAdoo appealed. On appeal before this court, McAdoo maintains that its rights to procedural due process were violated when the trial court entered the final forfeiture order on July 6, 2023, without a hearing. McAdoo argues that "it is entitled to a refund

---

(d) If a court issues a bench warrant due to a defendant's failure to appear on a felony or on a Class A or Class B misdemeanor that is violent or sexual in nature as determined by the court, or if a defendant is charged with a failure to appear, then the defendant shall be placed on any available state or federal list or database as a fugitive from justice, without limitation, within ten (10) days of the defendant's failure to appear. A surety is not liable for any undertaking if the defendant has not been placed on such a database within the time required by law.

(e) The surety is only responsible for costs in accordance with § 40-11-201.

[7] Rule 1.01 Local Rules of Practice, 16th Judicial District, provides, in pertinent part, that "[a]ny of these Rules may be suspended or varied in exceptional cases where the Judge determines justice so requires."

where the trial court failed to follow the lawful procedure" and further asks this Court to "issue a corrective mandate" as to "the trial court's behavior."

## II.

We begin with a brief explication of the bail bonding process. As recognized by the Tennessee Supreme Court,

> [t]he bail bond itself is a contract between the government on the one side and the criminal defendant and his surety on the other, whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of the bail set by the court.

*In re Rader Bonding Co., Inc.*, 592 S.W.3d 852, 859 (Tenn. 2019) (quoting *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002)). Thus, if a criminal defendant under bond fails to appear in court as ordered, the company that issued the bond may be called upon to pay the full amount of the bond into court as a forfeiture. The process by which a bonding company may be ordered to pay a forfeiture is controlled by state statute. *See id.* (citing 9 David L. Raybin, *Tennessee Practice: Criminal Practice & Procedure* § 4:33 (2018)).

Accordingly,

> where . . . a defendant fails to appear in court in accordance with the bail bond agreement, the trial court may enter a conditional judgment of forfeiture against the defendant and the defendant's sureties. [Tenn. Code Ann.] § 40-11-201. The court must then also issue a *scire facias* notifying the defendant and his sureties to show cause why the conditional judgment of forfeiture should not become final. [Tenn. Code Ann.] § 40-11-202. After 180 days, if the surety has not satisfied the court that it is entitled to relief, "the court may enter [a final] judgment [of forfeiture] for the state against the defendant and [his] sureties." [Tenn. Code Ann.] § 40-11-139(b) (2018 & Supp. 2019).

*Id*. The purpose of the writ of *scire facias* "is to give the parties to the bond 'a plain and simple notice of the default and forfeiture, and the time when the sureties are to appear and show cause why judgment final should not be entered against them.'" *Goldsby v. State*, 19 S.W.2d 241, 242 (Tenn. 1929) (quoting *State v. Frankgos*, 85 S.W. 79, 80 (Tenn. 1905)). Thus, in addition to notifying the surety that a forfeiture is pending, the writ of *scire facias* serves "to set a date for a hearing on final forfeiture." *Indem. Ins. Co. of N. Am. v.*

*Blackwell*, 653 S.W.2d 262, 264 (Tenn. Ct. App. 1983) (citing Tenn. Code Ann. §§ 40-11-202, 40-11-139).

**III.**

The procedural history of this case demonstrates that, in accordance with the applicable statutes, the trial court issued a writ of *scire facias* and set the hearing date for July 15, 2022. On three separate occasions, McAdoo requested this hearing date to be extended. The trial court granted McAdoo's request for relief on each occasion. The Order Denying Refund indicates that, after the third request for an extension of the hearing date, the trial court reset the hearing date to June 30, 2023, and stated that no further extensions of time would be granted.

The record contains no indication of what, if anything, occurred on June 30, 2023. Indeed, the record is silent as to any further activities until July 7, 2023, at which point the trial court entered its order declaring the conditional forfeiture to be final and the final forfeiture to be paid on August 5, 2023. On August 8, 2023, McAdoo paid the forfeiture.

Months later, after Defendant was finally apprehended in the latter part of October 2023, McAdoo reappeared in court requesting to be refunded the forfeiture. McAdoo raised no issue with respect to the proceedings in the trial court up to that date. Rather, McAdoo simply asked that it be refunded its forfeiture because Defendant had finally been taken into custody. It was not until the trial court denied this request for relief that McAdoo asserted that its procedural due process rights had been violated because, according to McAdoo, the trial court had "failed" to conduct a final forfeiture hearing.

Our first task is to determine what, exactly, is properly before this court. McAdoo's Notice of Appeal was filed on March 29, 2024. It provides as follows:

> Comes McAdoo Bonding Company ("Surety") pursuant to Rules 3 and 4 of the Tennessee Rules of Appellate Procedure (TRAP), and hereby gives notice of its appeal to the Court of Criminal Appeals from the judgment rendered in the above case on the 28th day of February, 2024, by the Honorable James A. Turner, Judge of Circuit Court for Rutherford County, Tennessee, which judgment denied the Surety's Motion for a refund and the subsequent motion to set aside the denial, as well as the initial final forfeit judgment.

Thus, McAdoo is essentially attempting to appeal three distinct judgments: (1) the judgment of final forfeiture, entered on July 7, 2023 (the Final Forfeiture Order); (2) the

Order Denying Refund; and (3) the Order Denying Motion to Set Aside. We begin by considering our ability to consider each of these three judgments.

## A. The Final Forfeiture Order

McAdoo paid the forfeiture in full on August 8, 2023. The record contains no indication that McAdoo paid the forfeiture under any form of protest. McAdoo remained silent about the forfeiture for more than ninety days after the trial court entered the Final Forfeiture Order. Not until October 18, 2023, after Defendant was apprehended, did McAdoo seek any form of redress. Even then, it raised no issue with respect to the validity of the Final Forfeiture Order or the process by which it was obtained. It was not until January 8, 2024, six months after the Final Forfeiture Order was entered, that McAdoo first claimed that the judgment was invalid because it was entered without a final forfeiture hearing and therefore in violation of its procedural due process rights.

Tennessee Rule of Appellate Procedure 4 mandates that, for appeals as of right, the notice of appeal must be filed with the clerk of the appellate court "within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). For "all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." *Id*. However, "[t]he notice of appeal requirement is jurisdictional and mandatory in all civil cases. If the notice of appeal is not filed as required by Rule 4, an appellate court is without jurisdiction to hear the issues raised on the defective appeal." *Hutcheson v. Barth*, 178 S.W.3d 731, 733 (Tenn. Ct. App. 2005) (footnotes omitted). Despite bail bond forfeitures being appealed to the Tennessee Court of Criminal Appeals,[8] this court has previously and repeatedly recognized that bail bond forfeitures are civil matters and governed by the Tennessee Rules of Civil Procedure. *See*, *e.g.*, *In re Gary's Bonding Co.*, No. M2018-00459-CCA-R3-CD, 2018 WL 5617940, at *1 (Tenn. Crim. App. Oct. 30, 2018) (indicating that "[a] bail bond forfeiture is a civil action, and the Tennessee Rules of Civil Procedure apply to the trial court proceedings"); *In re Guy James Bonding*, No. M2003-01033-CCA-R3CD, 2004 WL 1402562, at *1 n.3 (Tenn. Crim. App. June 23, 2004) (noting that "[t]he bail bond forfeiture process is a civil one governed by the Tennessee Rules of Civil Procedure"); *see also Indem. Ins. Co. of N. Am.*, 653 S.W.2d at 264-65 (stating regarding bail bond forfeitures that "[t]his process is a civil one but it is, nevertheless, appealed from the trial court to the Court of Criminal Appeals . . .[and that] [t]he Tennessee Rules of Civil Procedure apply to bail bond forfeitures just as they would in any other civil action." (citations omitted)). Tennessee Rule of Appellate Procedure 4(b) sets forth four types of motions under which "the time for appeal . . . shall run from entry of the order denying" the motion. These include a

---

[8] *In re Gary's Bonding Co.*, No. M2018-00459-CCA-R3-CD, 2018 WL 5617940, at *1 (Tenn. Crim. App. Oct. 30, 2018) (citing *Columbia Bonding Co. v. State*, 476 S.W.2d 633, 634 (Tenn. 1972)).

motion under Rule 50.02 of the Tennessee Rules of Civil Procedure for judgment in accordance with a motion for directed verdict, a motion to amend or make additional findings of fact under Rule 52.02, a motion for new trial under Rule 59.07, and a motion to alter or amend the judgment under Rule 59.04. Tenn. R. App. 4(b). The rules governing each of these types of motions indicate that they must be filed within 30 days of the entry of judgment. Tenn. R. Civ. P. 50.02 (setting the timeframe for filing a motion as "[w]ithin 30 days after the entry of judgment"); Tenn. R. Civ. P. 52.02 (setting the timeframe for filing a motion as "not later than 30 days after entry of judgment"); Tenn. R. Civ. P. 59.02 ("A motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58."). As noted above, neither a notice of appeal nor another time-extending motion was filed within 30 days after the Final Forfeiture Order was entered.

This court has previously considered the effect of untimely efforts to challenge final forfeiture judgments and concluded that we lacked jurisdiction to consider the matter. For example, in *In re Gary's Bonding Co.*, the trial court entered a final forfeiture order on May 22, 2017. 2018 WL 5617940, at *1. The bonding company did not promptly file a notice of appeal. *Id.* On January 17, 2018, the bonding company filed a motion to set aside the final forfeiture. *Id.* The trial court denied this motion, and the bonding company then filed a notice of appeal, seeking relief from the forfeiture. *Id.* This court held as follows:

> Here, the trial court entered its order of final forfeiture on May 22, 2017. The appellant, however, did not file a notice of appeal until March 12, 2018. While the appellant filed a motion to set aside the final forfeiture on January 17, 2018, that motion was not filed within 30 days of the final forfeiture order and, therefore, did not toll the 30-day requirement for filing a notice of appeal [as to the final forfeiture order]. Accordingly, we conclude the appellant's notice of appeal was untimely filed, thereby barring this Court's jurisdiction.

*Id.* Accordingly, this court dismissed the appeal. *Id.* at *2; *see also, e.g., State v. Michael N. Allen*, No. E2004-00292-CCA-R3-CD, 2004 WL 2108232, at *3 (Tenn. Crim. App. Sept. 22, 2004) ("Since the appellant did not appeal the forfeiture judgment before it became final or file one of the motions that would have extended the time for appeal, we are without jurisdiction to determine whether the trial court erred in entering the final forfeiture against the appellant." (citing Tenn. R. App. P. 4(b), (c))); *In re Gary's Bonding Co.*, No. M2011-00430-CCA-R3-CD, 2011 WL 4529645, at *2 (Tenn. Crim. App. Sept. 30, 2011) (holding that an untimely filed notice of appeal from the denial of a petition for exoneration deprived the court of jurisdiction to hear the appeal).

In summary, McAdoo filed neither a timely notice of appeal nor an appropriate timely motion that could extend the time for filing an appeal. Therefore, we are without jurisdiction to consider McAdoo's attempted appeal from the judgment of final forfeiture.

## B. The Order Denying Refund

The Order Denying Refund was entered on December 7, 2023, a Saturday. Accordingly, as to this judgment, McAdoo had until Monday, January 8, 2024, to timely file either a notice of appeal or a motion that would toll the time for filing a notice of appeal. On January 8, 2024, McAdoo timely filed its Motion to Set Aside Order Denying Refund pursuant to Tennessee Rule of Civil Procedure 59.04. After the trial court denied the Motion to Set Aside, McAdoo timely filed its notice of appeal. Accordingly, McAdoo's notice of appeal preserved this court's jurisdiction to consider both the Order Denying Refund and the subsequent Order Denying Motion to Set Aside. Because the filing of a timely 59.04 motion tolls the time for filing a motion to appeal as to the underlying judgment, the trial court's denial of McAdoo's timely filed 59.04 motion enabled McAdoo to appeal both the underlying judgment and the order denying the motion to alter or amend. *See, e.g., Burris v. Burris*, 512 S.W.3d 239, 254 n.11 (Tenn. Ct. App. 2016) ("Because Mother filed a timely Rule 59.04 motion and filed her notice of appeal within thirty days of the trial court's denial of that motion, she was entitled to appeal both the underlying judgment and the denial of her post-trial motion.").

However, while we have jurisdiction to consider McAdoo's challenge to the Order Denying Refund, we do not have a complete record. The Order Denying Refund recites that an evidentiary hearing was held on the Motion for Refund, yet a transcript of that hearing is not before us.

Pursuant to its appeal, McAdoo had a duty to transmit to this court a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of a complete record, this court may consider itself precluded from considering the issue, *see, e.g., State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988), or may simply presume that the trial court's ruling was supported by the evidence, *see, e.g., State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing *Smith v. State*, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979) & *Vermilye v. State*, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

Although we lack a transcript of the hearing, the trial court made findings of fact and expressly found credible the witness who testified on behalf of McAdoo. The trial court recited the efforts undertaken by McAdoo to find Defendant, including its communications with the United States Marshals Office, the Tennessee Bureau of Investigation, the Rutherford County Sheriff's Office, the Office of the District Attorney,

and the Murfreesboro Police Department. The trial court also credited McAdoo's use of bounty hunters and its posting of a reward for information about Defendant's whereabouts. The trial court noted that McAdoo's efforts continued even after it had paid the forfeiture. However, the court also noted that Defendant was ultimately at large for over a year and a half and was apprehended less than six miles from the courthouse, in close proximity to McAdoo's headquarters. The trial court's delineation of the relevant facts enables us to undertake a review of the Order Denying Refund on the merits.

Initially, we emphasize that McAdoo bore the burden of establishing that it was entitled to relief. *In re Rader Bonding Co., Inc.*, 592 S.W.3d at 860 (citing *In re Paul's Bonding Co.,* 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001)). We review the trial court's decision on McAdoo's request for relief from its forfeiture for an abuse of discretion. *See id.* at 858 (citing *Goldsby*, 19 S.W.2d at 242). We may conclude that the trial court abused its discretion only if it applied an incorrect legal standard, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the proof, or used reasoning that caused an injustice to McAdoo. *Id.*

The Tennessee Supreme Court has expressly stated that "trial courts ordinarily should not grant relief from forfeiture simply because a defendant fails to appear and a surety makes ordinary, good faith – but unsuccessful – efforts to locate the defendant . . . . Indeed the defendant's nonappearance is the very risk a surety assumes in the contract." *Id.* at 858 n.7 (citing *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 202)). Additionally, this court has observed that "[b]ecause the surety has entered into an agreement to assure the presence of the defendant thereby assuming calculated risk in the ordinary course of business, it can rarely be said that the trial court has abused its discretion by enforcing the terms when there has been a breach of the contract." *State v. Elijah D. Truitt*, No. M2005-01226-CCA-R3-CD, 2006 WL 2738876, at *4 (Tenn. Crim. App. Sept. 21, 2006); *see also, e.g., State v. Sergio Lara*, No. M2020-00263-CCA-R3-CD, 2021 WL 2701797, at *4 (Tenn. Crim. App. June 30, 2021) (affirming denial of surety's petition to be released from its bond on basis that defendant fled the jurisdiction, noting that "a bondsman must evaluate the inherent risk of flight before writing the bond and be diligent 'in keeping tabs on the defendant after the bond is written'" (quoting *In re Sanford & Sons Bail Co., Inc.*, 96 S.W.3d at 202)).

We have recited above the trial court's stated reasons for denying McAdoo's request for a refund. In light of the facts before us and the foregoing authority, we see no abuse of discretion by the trial court in reaching its conclusion. We hold that McAdoo is not entitled to relief on this basis.[9]

---

[9] After concluding that McAdoo was not entitled to a refund of the forfeiture on the merits, the trial court in its Order Denying Refund stated the following:

## C. The Order Denying Motion to Set Aside

As set forth above, we have jurisdiction to consider the Order Denying Motion to Set Aside. The record on appeal is also complete insofar as we have the written motion, a transcript of the hearing on the motion, and the trial court's written order denying relief. Accordingly, we are in a position to consider McAdoo's appeal from the Order Denying Motion to Set Aside.

Somewhat confusingly, McAdoo expressly indicated it was filing under Rule 59.04 of the Tennessee Rules of Civil Procedure but, nevertheless, labeled its motion as a motion to set aside, rather than a motion to alter or amend. As noted above, the trial court analyzed the motion both as a Rule 59.04 motion and a Rule 60.02 motion. On appeal before this court, McAdoo characterizes its motion as a motion to alter or amend. "Rule 59.04 allows

---

> The Court further finds that McAdoo is precluded from relief under local rules for untimely apprehension. The Court finds that the defendant was apprehended approximately seventy-four (74) days after the forfeiture became final. Therefore, the defendant's apprehension was untimely for relief pursuant to Local Rule 16.04(F).

As set forth above, Rule 16.04(F) Local Rules of Practice, 16th Judicial District, provides that, "[u]pon a forfeiture becoming final and timely paid, the bonding entity may apply for the return of bond proceeds if the defendant is incarcerated within Tennessee within thirty (30) days of the forfeiture becoming final." McAdoo argued in its Motion to Set Aside that this rule impermissibly limits a trial court's wide discretion to refund forfeitures pursuant to Tennessee Code Annotated section 40-11-204(a).

In its Order Denying Motion to Set Aside, the trial court addressed this issue as follows:

> The Court notes that the text of this local rule does not state what the outcome of a petition for exoneration will be if it is filed after the 30-day time period. Additionally, Local Rule 1.01 states that any of the local rules may be suspended where a judge finds that justice so requires. Candidly, even if McAdoo is correct in stating that Local Rule 16.04(F) limits the Court's discretion, the order denying exoneration clearly sets out the factual and legal basis for the Court's decision beyond the citation to Local Rule 16.04(F). As such, this ground for relief substantially lacks merit. The Court finds that the local rule does not limit its exercise of discretion . . . . The Court denies McAdoo's motion as to this ground.

McAdoo does not address the trial court's determination of this issue in its brief before this court. Accordingly, this issue is waived. *See* Tenn. R. App. P. 27(a)(7); *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024) (recognizing that an issue may be considered waived "when the brief fails to include an argument satisfying the requirements of [Tennessee Rule of Appellate Procedure] 27(a)(7)" (quoting *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012))). The trial courts of the Sixteenth Judicial District may wish to consider the possible conflict between Tennessee Code Annotated section 40-11-204(a) and Local Rule 16.04(F) and make any changes they deem necessary.

- 14 -

a party to seek relief from a judgment within thirty days after being entered; conversely, Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment." *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008). Where "the judgment was not yet a final, non-appealable judgment . . . Rule 59.04 is the applicable rule." *Id.*; *see also In re Lyric N.*, No. E2021-00578-COA-R3-CV, 2022 WL 3010501, at *7 (Tenn. Ct. App. July 29, 2022) (construing a motion to set aside that did not indicate what procedural rule it was filed under as a Rule 59.04 motion because it was filed while the decree was still appealable). Though inartful, we accept McAdoo's labeling of its motion as a Rule 59.04 motion to alter or amend, and we consider it as such.

We will reverse a trial court's ruling on a motion to alter or amend "only for an abuse of discretion." *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (citing *Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000)). As set forth above, a trial court abuses its discretion only if it "applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Rader Bonding Co., Inc.*, 592 S.W.3d at 858 (quoting *State v. Jones*, 568 S.W.3d 101, 127-28 (Tenn. 2019)).

In its motion, McAdoo claimed, for the first time in these proceedings, that the Final Forfeiture Order was infirm because it had been entered without the trial court having first conducted an actual hearing. That is, McAdoo began claiming six months after the fact that it had suffered a procedural due process violation. In rejecting McAdoo's claim, the trial court considered the text of Tennessee Code Annotated section 40-11-139[10] and a decision from this court indicating that a bonding company must only be provided with the *opportunity* to be heard before a final forfeiture is ordered. *See Danny Blankenship Bonding Co.*, 2016 WL 409663, at *3 (holding that bonding company was not entitled to relief on basis that there was no hearing prior to entry of the final forfeiture because the court had provided the bonding company with "the *opportunity* to be heard"); *see also In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 204 ("Generally speaking, a trial court must afford a surety an opportunity to establish its suitability for relief . . . .").

The trial court stated,

> In the case at bar, McAdoo was never denied a hearing. McAdoo was given notice of the conditional forfeiture through the scire facias. The Court conducted multiple hearings on McAdoo's motions seeking an extension to locate and surrender the defendant prior to final forfeiture. In each and every hearing the Court allowed McAdoo to present any evidence it saw fit to

---

[10] *See* footnote six, *supra*, for the text of this statute.

introduce. However, the defendant was ultimately not located in time. An order of final forfeiture was accordingly entered by the Court. The final forfeiture was . . . then paid without protest.

Emphasizing that McAdoo was asserting an issue regarding the final forfeiture hearing "*for the first time*," the trial court denied relief "as to this ground."

At oral argument, counsel for McAdoo asserted that the trial court erred in denying its motion because, for *sui generis* reasons, the Final Forfeiture Order should be set aside to correct a clear error of law or to prevent injustice. *See Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001). We disagree.

Motions to alter or amend a judgment pursuant to Tennessee Rule of Civil Procedure 59.04 "'may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.'" *Id.* However, a Rule 59.04 motion should not be used to alter or amend a judgment "if it seeks to raise new, previously untried legal theories" or "to present new, previously unasserted legal arguments." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998); *see also, e.g.*, Lawrence A. Pivnick, 2 Tenn. Cir. Ct. Prac. § 28:4 (2025) (observing that Rule 59.04 motions "should not be used to raise or present new, previously untried or unasserted theories or legal arguments"); *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (stating that "[a] Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments"). Rather, "[t]he judgment of a court should not 'be lightly changed, altered, amended or set aside, but only done upon very clear, convincing, cogent evidence that a true injustice has been done to the complaining party and that the complaining party is in no wise responsible, or termed in another way, negligent in protecting that party's interest.'" *Polster v. Polster*, No. M2020-01150-COA-R3-CV, 2021 WL 4167927, at *7 (Tenn. Ct. App. Sept. 14, 2021) (quoting *Myers v. Myers*, 891 S.W.2d 216, 220 (Tenn. Ct. App. 1994)).

The first time that McAdoo raised its due process objection was in its Rule 59.04 motion, asserting a due process objection that could have been raised much earlier in seeking relief. McAdoo could have responded to the trial court's January 2022 show cause order by requesting a hearing. McAdoo does not assert that it sought and was denied such a hearing in response to the trial court's show cause order as to which it failed to take action.[11] McAdoo could have filed an appropriate motion immediately following the

---

[11] "Parties have the responsibility to see to it that the record contains the evidence necessary to support their arguments on appeal." *Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007). "More particularly, the burden falls on the party asserting error: 'it is incumbent upon *the appellant* to provide a record that is adequate for a meaningful review.'" *Riddle v. Miclaus*, No. M2024-01335-COA-R3-CV,

original final forfeiture order, objecting to the entry of this order in the absence of a hearing. McAdoo could have presented its due process argument in its petition for a refund as further support for obtaining a refund. McAdoo raised a new legal basis, a new theory, for why it should obtain a refund for the first time in its motion to alter or amend. McAdoo has provided absolutely no explanation for failing to raise this argument earlier. Such failure is not cured by labeling in a conclusory manner the hearing issue "sui generis." Under such circumstances, we cannot conclude that the trial court abused its discretion in denying McAdoo's motion to alter or amend on the basis of a new argument that McAdoo could have previously raised.

## IV.

For the reasons discussed above, we affirm the trial court's judgment.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

---

2025 WL 1166481, at *2 (Tenn. Ct. App. Apr. 22, 2025) (quoting *Tanner v. Whiteco*, *L.P.*, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010)). McAdoo has also failed to ensure that the record contains the critical third extension order. The absence of this order has further complicated considering McAdoo's argument on appeal.